IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRENDA LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO.  2:11CV63-CSC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

On January 17, 2008, the plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.,* and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, alleging that she was unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review on December 28, 2010. (R. 1).  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

1383(c)(3).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .
>
> To make this determination[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.
>
> (1)  Is the claimant presently unemployed?
> (2)  Is the claimant's impairment severe?
> (3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the claimant unable to perform his or her former occupation?
> (5)  Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** The plaintiff, Brenda Eliane Lewis, was born on February 18, 1958. (R. 32). She lives in a single-wide trailer with her 16-year-old son. (R. 33). She has no medical insurance and no source of income other than limited financial assistance from

---

³ *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. *See Sullivan v. Zebley*, 493 U.S. 521,525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

her adult daughter. (R. 35, 44). Lewis completed school through her second year of college. (R. 35).

Lewis's prior work experience includes employment as a cashier, toll attendant, and courier. (R. 58-59). She has been unemployed since December 2006, when she left her job as a courier in which she delivered medicines to drug stores. (R. 127). As a courier, Lewis lifted items weighing no more then ten pounds. (R. 146). Lewis worked as a courier from May 2005 until December 2006, when she left her employment because her employer changed the type of items that its couriers were required to deliver to include heavy items such as office supplies and paper. (R. 52). According to Lewis, she left the job because the new items were too heavy for her to lift. (R. 35, 52). She "asked to be laid off because [her] job had changed and it had gotten harder." (R. 127).

At the hearing before the ALJ, Lewis claimed to be unable to work due to inability to lift objects greater than two pounds because they were "too heavy" for her to lift (R. 35, 44-45), bilateral carpal tunnel syndrome[4] that causes pain in her wrists and numbness in her fingers (R. 36), fibromyalgia (R. 39), lower back pain and pain in her legs and right hip (R. 40-41), "pressure" and feelings of fluttering in her chest (R. 42-43), and shortness of breath (R. 44). Because of carpal tunnel syndrome, Lewis wears braces on her wrists when she drives and when she sleeps. (R. 38). The pain medicines Lewis takes for her carpal tunnel syndrome and fibromyalgia make her sleepy. (R. 38, 40).

---

[4] In 1996, Lewis had surgery on one of her hands to relieve carpal tunnel syndrome. (R. 39). In 1997, she had surgery on the other hand to relieve carpal tunnel syndrome. (R. 39).

**B.     The ALJ's Findings**

At step one of the sequential evaluation process, the ALJ found that Lewis has not engaged in substantial gainful activity since the alleged onset date of her disability. (R. 17). *See* 20 C.F.R. §§ 404.1520, 416.920.

At step two of the sequential evaluation process, the ALJ determined that Lewis had the following severe impairments: "status post bilateral carpal tunnel release; obesity; fibromyalgia; and degenerative changes of the spine. She also has the following non-severe impairments: hypertension (with no end organ damage) and normal right hip by X-ray." (R. 17).

At step three of the sequential evaluation process, the ALJ found that Lewis "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (R. 17).

In step four of the sequential evaluation process, the ALJ found that Lewis

> has the residual functional capacity to perform light work as defmed in 20 CFR 404.1567(b) and 416.967(b), except the claimant requires a sit/stand option allowing her to alternate sitting or standing at 60 minute intervals throughout the day. She can never climb ladders, ropes, or scaffolds. She can never kneel or crawl. She can occasionally rotate, flex, or extend the neck. She can occasionally reach overhead with the right arm. She can occasionally use her fingers bilaterally for fine manipulation of items no smaller than the size of a paper clip. She should avoid all exposure to operational control of moving machinery and unprotected heights. She should avoid all exposure to hazardous machinery.

(R. 20).

Further, at step four of the sequential evaluation process, the ALJ found that Lewis had the residual functional capacity to perform past relevant work as a courier both as Lewis had actually performed that job, and as the job is generally performed in the economy. (R. 24-25).

Accordingly, the ALJ determined that Lewis was not disabled within the meaning of the Social Security Act. (R. 25). Because the ALJ determined that Lewis was not disabled at step four of the sequential evaluation process, the ALJ did not proceed to step five of the analysis.

### C.     Plaintiff's Claims.

Lewis argues that the ALJ erred at step four by finding that she had the residual functional capacity to perform the job of a courier as she had actually performed that job in the past. Specifically, Lewis argues that the record contains no evidence that, as she actually performed the job of a courier, she only occasionally used her fingers for fine manipulation of items no smaller than the size of a paper clip.

Lewis also argues that, as generally performed, the job of a courier requires medium exertion and, therefore, is beyond her residual functional capacity to perform light work.

In addition, Lewis argues that, in determining whether she was able to perform her past relevant work as a courier, the ALJ relied testimony by a Vocational Expert ("VE") in response to a hypothetical question that allegedly did not adequately describe Lewis's residual functional capacity. Specifically, the ALJ asked the VE to assume that Lewis was limited to "no more than occasional fine manipulation with the hands bilaterally" (R. 60),

6

without mentioning that Lewis's fine manipulation activities should be limited to "items no smaller than the size of a paperclip" (R. 20).

## IV. Discussion

**A.   Whether ALJ erred by failing to find that Lewis could perform the job of a courier as Lewis had actually performed the job.**

At step four of the sequential evaluation, the ALJ found that Lewis had the residual functional capacity to perform the physical and mental demands of her past relevant work as a courier.  Lewis argues that the record contains no evidence as to the size of items that Lewis handled in her past courier work, relative to the size of a paperclip.  Thus, Lewis contends, the record contains no evidence that her past relevant work as a courier fit within her residual functional capacity as determined by the ALJ, which limited her to using her fingers for fine manipulation of "items no smaller than a paper clip" due to her carpal tunnel syndrome.   (R. 20).  *See Cannon v. Bowen*, 858 F.2d 1541, 1545-46 (11th Cir. 1988) (holding that the ALJ erred by finding that the claimant's past work did not require him to perform work "greater than light physical exertion, climbing ladders, working at unprotected heights or work or exposure to temperature extremes," where the ALJ never asked the claimant "if his job . . . included any of these prohibited activities").

Although the "ALJ has a basic duty to develop a full and fair record," the burden is on the claimant to introduce evidence in support of her application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir.2003).  Specifically, the sequential process places a "very heavy burden" on the claimant to demonstrate her inability to perform past relevant

work. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.2005). "Past relevant work" is defined as substantial gainful activity that the claimant has performed within the last fifteen years and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). A claimant is considered able to perform her past relevant work if she has the residual functional capacity to do the work "either as [she] actually performed it or as [that work is] generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

The record supports the ALJ's determination that Lewis could perform past relevant work as a courier as she had performed that work in the last fifteen years. Specifically, within the last fifteen years, *before Lewis's employer changed the requirements of her employment* to include the lifting of heavy objects, Lewis was able to perform the requirements of the job. According to Lewis, she left her courier position because, after her employer changed the nature of the materials it delivered, she was unable lift the heavy objects that had been added to her deliveries because of her "problem with her hands." (R. 35, 52, 53, 127). She "asked to be laid off because [her] job had changed and it had gotten harder." (R. 127). However, Lewis acknowledged at the hearing before the ALJ that the problem with her hands (i.e., carpal tunnel syndrome) has "stayed the same"[5] (as opposed to improving or getting worse) since she first began suffering from carpal tunnel syndrome in 1992. (R. 36). Lewis did not assert that the courier position required more fine manipulation

---

[5] The court also notes that, based on specific evidence in the medical record, the ALJ discounted Lewis's testimony with respect to the current extent of the pain and other effects of her carpal tunnel syndrome. (R. 22). Lewis has not challenged the ALJ's findings with respect to the extent of her carpal tunnel syndrome symptoms.

8

than she was able to perform.[6] (R. 53). In short, Lewis did not leave her courier job because her functional limitations changed or because she could no longer perform the requirements of the work that she had been doing all along; rather, she left because her employer changed the nature of the job from carrying relatively light objects to carrying objects that were too heavy for her.

Accordingly, the record establishes that Lewis is able to perform work as a courier *as she has actually performed that work within the last fifteen years* because, even with the functional limitations of carpal tunnel syndrome, she was able to perform such work before her employer changed the nature of her employment. *See* 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" as "work that you have done within the past 15 years"). Thus, at most, the ALJ's failure to ask Lewis about fine manipulation of objects "smaller than a paper clip" could have constituted no more than harmless error and could not serve as grounds for reversal. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the harmless error rule prevented reversal of an ALJ's decision).

Therefore, substantial evidence supports the ALJ's determination that Lewis could perform her past relevant work as a courier and that Lewis is not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can

---

[6] By contrast, when the ALJ asked if Lewis had any difficulty performing her past work as a cashier and toll attendant, Lewis said she could not perform the repetitive hand movements required by those jobs (R. 54).

still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.").

**B.     Other Issues Raised by Lewis**

Lewis argues that, as generally performed in the national economy, and contrary to the testimony of the VE, the job of a courier requires medium exertion and, therefore, is beyond her residual functional capacity to perform light work. Lewis also argues that the VE was not informed that Lewis was limited to fine manipulation of items no smaller than a paperclip.

It is not necessary to consider these additional arguments. Even without the VE's testimony that Lewis was able to perform her past relevant work, Lewis's own testimony and the other evidence in the record supports the ALJ's determination that Lewis could work as a courier as she had actually performed that job during the past fifteen years. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) (holding that an ALJ need not consult a vocational expert in evaluating, at step four, whether a claimant can perform her past relevant work); *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) ("[W]hen a claimant can perform his past relevant work, he is not disabled. Once this decision is made[,] the services of a vocational expert are not necessary." (Citations and internal quotation marks omitted)); *see also* SSR 82-62 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands[,] and nonexertional demands of such work.").

Therefore, even if the testimony of the VE was erroneous, the ALJ's reliance on such testimony could not constitute more than harmless error and would not support reversal. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error standard in a social security case).

## V. Conclusion

For the reasons as stated, the court concludes that the decision of the Commissioner denying benefits to Lewis should be affirmed. The Court will enter a separate final judgment.

Done this 13th day of July, 2012.

                         /s/Charles S. Coody
                         CHARLES S. COODY
                         UNITED STATES MAGISTRATE JUDGE